638 S.E.2d 51

**In the Matter of Greenwood County Magistrate
Joe C. CANTRELL, Respondent.**

**No. 26223.**

Supreme Court of South Carolina.

Submitted Oct. 17, 2006.

Decided Nov. 20, 2006.

Henry B. Richardson, Jr., Disciplinary Counsel, and Robert E. Bogan, Assistant Deputy Attorney General, both of Columbia, for Office of Disciplinary Counsel.

C. Rauch Wise, of Greenwood, for respondent.

PER CURIAM:

In this judicial disciplinary matter, respondent and the Office of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by Consent pursuant to Rule 21, RJDE, Rule 502, SCACR. In the agreement, respondent admits misconduct and consents to the imposition of a public reprimand or a definite suspension pursuant to Rule 7(b), RJDE, Rule 502, SCACR. Respondent requests any suspension be made retroactive to the date of his interim suspension.[1] We accept the agreement and impose a one (1) year suspension. We decline respondent's request that the suspension be made retroactive to the date of his interim suspension. The facts as set forth in the agreement are as follows.

## FACTS

In 1981, respondent was appointed part-time magistrate for Greenwood County. In 1989, he became a full-time magis-

---

1. On May 4, 2006, the Court placed respondent on interim suspension.

trate and the chief magistrate and served continuously as chief magistrate until being placed on interim suspension on May 4, 2006.

Until approximately January 2005, the Greenwood County Magistrate Court's deposit was taken directly to the bank. This procedure was changed at the request or suggestion of county officials or agencies and, from that point, deposits from various county agencies, including the magistrate court, were taken to the Greenwood County Treasurer's Office and responsibility for the deposits was given to that office.

Accordingly, the daily deposit for criminal, civil, and traffic courts were compiled at the end of each day and placed in a safe. The deposit would be taken to the Treasurer's Office the following morning. The Treasurer's Office did not issue a receipt for the deposit, but would forward the bank's deposit receipt back to respondent's office. On some occasions, it took several days for the receipt to be returned to respondent's office. Respondent acquiesced in these changes without inquiring whether the deposit procedure complied with the Chief Justice's Administrative Order of November 9, 1999.

Respondent gave the office manager, who was a part-time magistrate, exclusive or virtually exclusive authority to manage the daily financial activity of the Greenwood County Magistrate's Court. The extent of respondent's financial oversight consisted of making "spot checks" to make sure the deposit slips coincided with the bank statements.

In 1998, Toni Cole began working in respondent's office. Her initial responsibilities were limited primarily to eviction and fraudulent check cases and to receiving and receipting money. Later, her responsibilities included compiling the deposit and taking it to the Treasurer's Office on occasions when other employees were absent or unavailable.

On February 3, 2004, $1,000.00 in cash was discovered missing from the safe. Law enforcement suspected Cole of taking the money but she scored "inconclusive" on a polygraph examination in connection with the investigation. No criminal charges were brought against her at the time and the issue of the missing $1,000.00 remained unsolved. Respondent made no changes to the financial procedures in the office and Cole

was allowed to continue her duties with respect to office finances, which included unsupervised access to the safe.

In December 2005, $500.00 was discovered missing from the safe. Cole subsequently claimed to have found the money behind the file cabinet on which the safe sat, though recollections differ as to whether this occurred. shortly after it was discovered missing or as much as a month or more later. Because the money was recovered, even though under suspicious circumstances, there was apparently no inquiry as to the validity of Cole's explanation. Respondent made no changes concerning the financial procedures and Cole was allowed to continue her duties with respect to office finances, which included unsupervised access to the safe.

On February 27, 2006, the Court issued *Matter of Hensley*, 367 S.C. 619, 627 S.E.2d 716 (2006), which addressed a magistrate's failure to exercise financial oversight of office staff. ODC is informed that the *Hensley* opinion was brought to respondent's attention by another Greenwood County Magistrate who expressed concern that the November 9, 1999 administrative order was not being followed in the Greenwood County Magistrate's Court, particularly in light of the above-referenced incidents. Other magistrates reported that respondent stated he was not going to comply with the financial oversight procedures set forth in the order with the words "I'm not going to do it. You going to do it?"

Respondent acknowledges having a conversation with another magistrate about the *Hensley* opinion, but states his comments were misunderstood. Respondent represents that the other magistrate was the most knowledgeable about court financial procedures and that his intent was to change the deposit procedure by having the other magistrate review the deposits. Accordingly, respondent stated he said, "I'm not going to do it, you're going to do it, and then I'm going to check behind you." Respondent further acknowledges, however, that no efforts were undertaken on his part to put these specific changes into effect before the present matters came to light.

On March 8, 2006, a court employee discovered that $2,500.00 received as bond payment on February 16, 2006 was not shown as deposited on bank records. On April 5, 2006, an

employee reconciling bank records discovered that the entire deposit of $4,803.20 on March 17, 2006 was missing. Respondent reported the matter to the Greenwood County Sheriff's Department which retained jurisdiction over the complaint and commenced an investigation. At a meeting of investigators and court personnel the next day, two investigators observed the employees in attendance and scored them in accordance with a nationally recognized psychologically-based deception detection and interview technique.

Based on that evaluation, investigators elected to question Cole first. Subsequently, Cole confessed to stealing the March 17, 2006, deposit as well as to the thefts of $4,497.50 (the deposit for March 27, 2006) and $10,157.00 (the deposit for April 3, 2006) that were not previously known to be missing. According to Cole, she took the deposits to her vehicle rather than to the Treasurer's Office, removed and kept the cash, and later shredded or discarded the checks and other non-cash payments. Cole also confessed to the $1,000.00 theft in February 2004, the $2,500.00 theft in February 2006, and to removing and replacing the $500.00 in December 2005.

Auditors hired by the Sheriff's Department determined that other money was taken by a second employee through voiding or deleting cases from the computer system. The exact amount missing is unknown at this time.

Questions concerning the oversight of restitution monies were also raised to ODC during the investigation of this matter. It was reported that the Greenwood County Magistrate's Court accepted and disbursed restitution payments, including cash "off the books" either without receipts or with receipts handwritten on whatever scrap of paper might be available.

Respondent informs ODC that restitution was either paid directly to the victim in court or that the payor was required to later deliver a check or money order payable to the victim. Court personnel would notify the victim who would pick up the payment. Respondent represents that any other receipt of restitution funds by court personnel was not authorized and that he had no knowledge of the receipt of restitution payments in any unauthorized manner.

The Chief Justice's Administrative Order of November 9, 1999 provides, among other things, that:

[w]hile the Court recognizes that magistrates must utilize employees of their office to assist in the handling of monies of their office, each magistrate is personally responsible for compliance with all procedures for the handling of the monies of their magisterial office and proper record keeping related thereto and shall regularly, but no less than monthly, review bank statements and other records to insure such compliance.

Respondent represents that he relied entirely on his staff to properly document and disburse the monies of his office and acknowledges that his supervision and oversight did not comply with the requirements of the Chief Justice's Administrative Order of November 9, 1999.

ODC contends that the misappropriations would have been deterred or minimized had the mandates and procedures required by the November 9, 1999 order been in place. Respondent does not contest this representation.

In addition, it was reported to ODC that, during the course of the investigation of these matters by the Greenwood County Sheriff's Department, respondent attempted to influence one or more other magistrates to limit the scope of the questions they would be willing to answer during polygraph examinations. According to one magistrate, respondent suggested they only answer questions about whether they took money or whether they knew anyone else had taken money, thereby avoiding any questions about the lack of financial oversight in the magistrate's court.

## LAW

By his misconduct, respondent admits he has violated the following Canons of the Code of Judicial Conduct: Canon 1 (judge shall uphold the integrity of the judiciary); Canon 1A (judge should personally observe high standards of conduct); Canon 2 (judge shall avoid impropriety and the appearance of impropriety in all activities); Canon 2A (judge shall respect and comply with the law); Canon 3 (judge shall diligently perform duties of judicial office); Canon 3A (judge shall perform all duties prescribed by law); Canon 3(C)(1) (judge

shall maintain professional competence in judicial administration); and Canon 3(C)(2) (judge shall require staff to observe standards of fidelity and diligence that apply to the judge), of Rule 501, SCACR. Respondent further admits he violated the Chief Justice's Administrative Order of November 9, 1999. Finally, respondent admits that his misconduct constitutes grounds for discipline pursuant to Rule 7(a)(1) (it shall be ground for discipline for judge to violate the Code of Judicial Conduct), Rule 7(a)(4) (it shall be ground for discipline for judge to persistently fail to perform judicial duties or persistently perform judicial duties in an incompetent or neglectful manner), and Rule 7(a)(7) (it shall be ground for discipline for judge to willfully violate a valid court order issued by a court of this state) of the Rules for Judicial Disciplinary Enforcement, Rule 502, SCACR.

## CONCLUSION

We find respondent's misconduct warrants a suspension from judicial duties. We therefore accept the Agreement for Discipline by Consent and suspend respondent for one (1) year. The suspension shall be without pay.

**DEFINITE SUSPENSION.**

TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.